UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____

MOHAMAD ALHAMMAMI,

          Plaintiff,

v.

JEDIDAH HUSSEY, in her official capacity as
Director, Arlington Asylum Office
U.S. Citizenship and Immigration Services;

KENNETH T. CUCCINELLI, in his official capacity as
Senior Official Performing the Duties of
Director, U.S. Citizenship and Immigration Services;

CHAD F. WOLF, in his official capacity as Acting
Secretary, U.S. Department of Homeland Security;

WILLIAM P. BARR, in his official capacity
as Attorney General, U.S. Department of Justice;

CHRISTOPHER WRAY, in his official capacity as
Director, Federal Bureau of Investigation,

          Defendants.

_____

Civ. No.

## COMPLAINT FOR MANDAMUS AND DECLARATORY JUDGMENT

The Plaintiff, MOHAMAD ALHAMMAMI, through undersigned counsel, complains of

the Defendants, JEDIDAH HUSSEY, Director of the Arlington Asylum Office, U.S. Citizenship

and Immigration Services; KENNETH T. CUCCINELLI, Senior Official Performing the Duties

of Director, U.S. Citizenship and Immigration Services, Director, U.S. Citizenship and

Immigration Services; CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland

Security; WILLIAM P. BARR, Attorney General, U.S. Department of Justice; and

CHRISTOPHER WRAY, Director, Federal Bureau of Investigation, as follows:

**Introduction**

1.   This is an action to compel the Defendants and those acting under them to take all appropriate action immediately and forthwith to issue a decision on the Form I-589, Application for Asylum and for Withholding of Removal ("Asylum Application"), which was properly filed by the Plaintiff, Mr. Alhammimi, and received by the Defendant, U.S. Citizenship and Immigration Services ("USCIS") of the U.S. Department of Homeland Security ("DHS"), on June 4, 2013, Plaintiff, a Syrian National, was interviewed on his asylum application on August 13, 2014. Since his interview, Plaintiff has repeatedly—desperately—urged Defendant USCIS to adjudicate his asylum application. Despite his dogged efforts, Plaintiff has received neither a decision nor even a meaningful explanation from Defendants for why they have failed to adjudicate his application. Defendants' delay—which goes well beyond the normal two-week post-interview adjudication period—is unreasonable, and the remedy of mandamus is therefore sought.

2.   Plaintiff is entitled to receive a decision on his asylum application within a reasonable period of time. 5 U.S.C. §555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). However, it has now been 2039 days since Mr. Alhammami was interviewed at the Arlington Asylum Office by Defendants, who have improperly withheld action on the application to the detriment of the rights and privileges of the Plaintiff. Mr. Alhammami respectfully requests that this Court compel the Defendants to perform their mandatory duty to adjudicate the Plaintiff's long-pending asylum application without further unreasonable delay.

**Jurisdiction**

3.   This is a civil action brought pursuant to 28 U.S.C. §1331 (federal question jurisdiction),

and 28 U.S.C. §1361 (action to compel an officer of the United States to perform his duty) to

redress the deprivation of rights, privileges, and immunities secured to the Plaintiff, by which

statutes jurisdiction is conferred, to compel the Defendants to perform a duty that the

Defendants owe to the Plaintiff.

4.   Under 28 U.S.C. §1361, "[t]he district courts shall have original jurisdiction of any action

in the nature of mandamus to compel an officer or employee of the United States or any

agency thereof to perform a duty owed to the plaintiff."  The Code of Federal Regulations

makes plain that USCIS has a mandatory and affirmative duty to adjudicate a properly filed

asylum application.  8 C.F.R. §208.9 ("The Service shall adjudicate the claim of each asylum

applicant whose application is complete within the meaning of § 208.3(c)(3) and is within

the jurisdiction of the Service.").

5.   8 U.S.C. §1252 does not deprive this Court of jurisdiction. 8 U.S.C. §1252(a)(2)(B)

provides that no court shall have jurisdiction to review either (i) "any judgment regarding the

granting of" various forms of relief from removal, or (ii) "any other decision or action . . . the

authority for which is specified . . . to be in the discretion of the Attorney General or the

Secretary of Homeland Security." Because the adjudication of a properly filed asylum

application is neither a judgment regarding the granting of relief from removal nor a decision

or action that is specified to be in the discretion of the Attorney General or the Secretary of

Homeland Security, the Court retains original mandamus jurisdiction over this claim. *See*

*Aslam v. Mukasey*, 531 F. Supp. 2d 736, 740-41 (E.D. Va. 2008) (noting the conflicting

authority within this district but siding with the majority of district courts to address the

analogous question of whether federal courts have mandamus jurisdiction to compel USCIS

to adjudicate an unreasonably delayed adjustment of status application); *Kashkool v.*

*Chertoff*, 553 F. Supp. 2d 1131, 1136-39 (D. Ariz. 2008) ("Numerous district courts . . .

which have addressed this specific issue overwhelmingly conclude that . . . the pace at which

USCIS processes . . . applications is nondiscretionary and that [8 U.S.C. §242(a)(2)(B)(ii)]

does not bar judicial review."); *Hassane v. Holder*, 2010 U.S. Dist. LEXIS 58372, at *3

(W.D. Wash. 2010) (holding that the "overwhelming majority of district courts" do not

construe 8 U.S.C. §1252(a)(2)(B) as stripping jurisdiction for mandamus suits); *id*. at *8

(listing examples of courts finding jurisdiction despite § 242(a)(2)(B) defense claims).

Through this complaint, the Plaintiff is not challenging a decision on his asylum application,

as no decision has yet been made. Rather, the Plaintiff seeks an order compelling the

Defendants to adjudicate the application. The relief sought is not discretionary but is, by

definition, a mandatory duty. *See, e.g., Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002).

6.   The Administrative Procedure Act (APA) also requires USCIS to carry out its duties

within a reasonable time. 5 U.S.C. §555(b) (providing that "[w]ith due regard for the

convenience and necessity of the parties or their representatives and within a reasonable time,

each agency shall proceed to conclude a matter presented to it"). If the agency fails to render

a decision within a reasonable time, the Court has power under 5 U.S.C. §706(1) to compel

the agency to do so. 5 U.S.C. §706(1) (conferring power on the U.S. District Courts to

compel agencies to perform "action unlawfully withheld or unreasonably delayed"). As set

forth below, the over 67-month post-interview delay in processing the Plaintiff's asylum application is unreasonable.

7.   Finally, this Court has jurisdiction over the present action pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act, to declare the Defendants' failure to act on the Plaintiff's asylum application to be arbitrary and capricious, and contrary to the Immigration and Nationality Act (INA), 8 U.S.C. §§1101 *et seq.*, the federal regulations, and the APA. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 565 (D.C. Cir. 1970); *see also* 8 U.S.C. §1158; 8 C.F.R. §208.9; 5 U.S.C. §§555(b), 706(1), 706(2).

## Venue

8.   Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(e), because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in this district.

## Parties

9.   The Plaintiff, Mohamad Alhammimi, is a 66 year old Syrian National. He is an applicant for asylum, having properly filed an I-589 application that is currently pending with USCIS.

10.  Jedidah Hussey, is the Director of the Arlington Asylum Office. This suit is brought against Director Hussey in her official capacity, as she is charged with adjudicating all asylum applications that fall under her office's jurisdiction which includes all I-589 filed from the states of Alabama, Georgia, Maryland, North and South Carolina, Virginia, West Virginia, the District of Columbia, and several counties in Pennsylvania.

11. Kenneth T. Cuccinelli is the Senior Official Performing the Duties of the Director, United States Citizenship and Immigration Services. This suit is brought against Senior Official Cuccinelli in his official capacity, as he is charged with overseeing the actions of USCIS, as USCIS is the component of DHS that is responsible for adjudicating all asylum applications.

12. Chad F. Wolf is the Acting Secretary of the Department of Homeland Security. This suit is brought against Acting Secretary Hussey in his official capacity, as he is charged with overseeing the actions of DHS, including adjudicating all asylum applications.

13. Christopher Wray is the Director of the Federal Bureau of Investigation. This suit is brought against Director Wray in is official capacity, because as a matter of policy, he is responsible for performing background and security checks for certain applicants for immigration benefits.

14. William P. Barr is the Attorney General of the United States. This suit is brought against him in his official capacity, as applicants for asylum must establish eligibility to the satisfaction of the Attorney General.

## Factual Allegations and Legal Background

15. Plaintiff is a Syrian national who was jailed by the Al Assad regime for 23 years for a political crime that he did not commit.

16. During that time, he was beaten and tortured.

17. According to his application, on January 6, 1982, the Plaintiff was a Major in the Syrian Air Force. On that date he was arrested and charged with conspiring to overthrow the

government. He believes that this was because he had not joined the Baathist political party. Specifically, it was alleged that he was a member of the Muslim Brotherhood.

18. He was faced torture on a daily basis for the first three months of his confinement, suffering electric shocks, being hanged by his feet or arms and beaten, having cigarettes extinguished on his body, and being made to walk or crawl over small pieces of broken glass. He was held in solitary conferment while handcuffed and blindfolded, only being allowed to remove the blindfold while using the toilet (only twice per day) and eating. He was held in these conditions until he signed a false confession.

19. After that period, he and the other "conspirators" were moved to another prison. At that prison, he continued to be held in solitary confinement, only allowed to use a toilet three times per day, and shower once a month with only cold water. He remained in this Prison for five years.

20. He was moved again. At the new Prison, he was held in a small cell with 5 other "conspirators." The space was so small, they had to take turns lying down. The cell they were held in was underground, and the lights were never turned off. The were not allowed to even look at their jailors, made to face the wall when the sailors interacted with them. These conditions lasted about a year until the prisoners staged a successful hunger strike.

21. After about ten years, he was finally presented for "trial" on September 8, 1991. He did not have counsel at this trial, and the trial only lasted about two minutes. He was convicted and sentenced to 20 years of hard labor. He was then transferred to a military prison.

22. At the Tadmur military prison, he was beaten on a daily basis for the first three months. After that, he was held in a large cell with forty one people in it. He was placed on starvation rations. The hard labor that was a part of his sentence was more beatings, and forced physical exercise. He was allowed family visits being in 1987, of ten minutes per year.

23. He was transferred to the Sednaya Prison in 2001, and was released from Prison ion July 17, 2004, two years and seven months past his release date.

24. During the Syrian revolution, he was threatened with return to Prison if he did not provide monthly reports to the government about the Syrian opposition. He could not provide such reports because he had no information to share. During the same time period, he was threatened with kidnapping and murder by armed opposition to give them sensitive information about the status of aviation in Syria.

25. He then tried to obtain a passport while avoiding his home. He was prevented from obtaining a passport under his own name, so he obtained one with a fake name. He used that passport to flee Syria, eventually arriving in the United States on March 1, 2013.

26. He filed his asylum application, which was received by USCIS on June 4, 2013.

27. USCIS may grant asylum to qualified applicants who meet the statutory requirements set forth at 8 U.S.C. §1158, and the regulatory requirements set forth at 8 C.F.R. §208. To establish eligibility for asylum, an applicant must file a Form I-589, Application for Asylum and for Withholding of Removal, with USCIS, and demonstrate that he or she meets the definition of "refugee" codified at 8 U.S.C. §1101(a)(42). A refugee is "any person who is outside any country of such person's nationality or, in the case of a person having no

nationality, is outside any country in which such person last habitually resided, and who is

unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the

protection of, that country because of persecution or a well-founded fear of persecution on

account of race, religion, nationality, membership in a particular social group, or political

opinion." 8 U.S.C. §1101(a)(42).

28. Adjudication of a properly filed asylum application by a qualified applicant who is not in

removal proceedings before the Executive Office for Immigration Review is a ministerial act

for which USCIS has exclusive authority and responsibility. *See* 8 C.F.R. §208.9(a).

29. "Any alien who is physically present in the United States" may apply for asylum. 8

U.S.C. §1158(a)(1). In general, he or she must file for asylum within one year of arrival in

the United States. 8 U.S.C. §1158(a)(2)(B). There are numerous bars to asylum, including

participation in the persecution of others, engaging in terrorist activity, or being convicted of

a "particularly serious crime." 8 U.S.C. §1158(b)(2)(A).

30. None of the bars to asylum applies to the Plaintiff.

31. On June 4, 2013, Plaintiff's Asylum Application was received by Defendant USCIS. *See*

Exh. 2. Pursuant to 8 U.S.C. §1158 and 8 C.F.R. §208, he filed the necessary forms and

supporting documentation.

32. On August 13, 2014 the Plaintiff was interviewed by an Asylum Officer on his claim.

33. At no point during or after the interview has USCIS requested additional evidence from

Plaintiff.

34. Since his interview, Plaintiff has repeatedly—desperately—urged Defendant USCIS to adjudicate his asylum application.

35. Specifically, Plaintiff has taken the following steps in the wake of his interview to urge USCIS to adjudicate his asylum application in a timely manner by going to the Asylum Office and inquiring in person. Specifically, he has records of the flooding visits:

a.      On April 13, 2016 (609 days after his interview) he visited the office. He was told: "Your case still have (sic) several processes to go through. Unfortunately, we are unable to provide you with a time frame on when a decision will be rendered."

b.      On October 17, 2017 ( 1161 days after the interview) when he went to the Asylum Office to check his case status he was told "Supervisor is working on final decision on your case."

c.      On January 3, 2018 (1239 days after his interview) he again visited the office. He was told that his case is "pending."

d.      On January 10, 2018 (1246 days after his interview) he again visited the office. He was told that his case is "Giving (sic) to a Supervisor".

e.      On January 17, 2018 (1253 days after his interview) he again visited the office. He was told that his case is "case decision pending."

f.      On January 24, 2018 (1260 days after his interview) he again visited the office. He was told that his case is "still in review process."

g.      On February 7,2018 (1274 days after his interview) he again visited the office. He was told that his case is "Decision Pending".

h.      On February 14, 2018 (1281 days after his interview) he again visited the office. He was told "Case is still pending at this time."

i.      On February 28, 2018 (1295 days after his interview) he again visited the office. He was told that his was "Case still review/ no decision".

j.      On April 25, 2018 (1351 days after his interview) he visited again. He was told that his case is "pending."

k.      On May 30, 2018 (1386 days after his interview) he was told the status of his case was "no decision made for this case yet."

l.      On July 25, 2018 (1442 days after the interview) he returned to the Asylum Office and was told that the status was "Case status pending as of 7/25/18".

m.      On August 29, 2018 (1477 days after the interview) when he returned to get status, he was simply told that the case was pending.

n.      On January 16, 2019 (1617 days after the interview) when he returned to the Asylum Office, he was told "Your case still under review for decision."

o.      Despite repeated visits to the Asylum Office, all requests end with some version of the status of his case as "pending."

36. Despite all these measures, Defendants have unreasonably refused to render a decision on Plaintiff's asylum application.

37. Adjudication of a properly filed asylum application by a qualified applicant who is not in removal proceedings before the Executive Office for Immigration Review is a ministerial act for which USCIS has exclusive authority and responsibility. *See* 8 C.F.R. §208.9(a).

38. The Plaintiff is understandably desperate to receive a decision on his asylum application. Such delay impacts the Plaintiff's ability to move forward with his life in the United States, because it precludes him from acquiring lawful permanent resident status, and getting on a path to U.S. citizenship.

39. Plaintiff is unaware of any reason why his application should be delayed.

40. Defendants have provided no explanation for the delay.

41. Administrative remedies have been exhausted.

**Claims for Relief**

COUNT 1
(Petition for Mandamus, 28 U.S.C. §1361)

42. All the foregoing allegations are repeated and realleged as though fully set forth herein.

43. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the Defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Iddir*, 301 F. 3d at 499; *see also Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005). The Plaintiff meets these criteria.

44. First, the Plaintiff has a clear right to the relief requested, as he has fully complied with all the statutory and regulatory requirements for seeking asylum, including the submission of all necessary documentation. *See* 8 U.S.C. §1154; 8 C.F.R. §208. The Defendants have willfully and unreasonably failed to process or adjudicate the Plaintiff's asylum application

has remained pending for approximately 67 months *following his interview*, thereby

depriving the Plaintiff of his rights under the INA, APA, and applicable regulations to have a

properly filed asylum application adjudicated in a timely manner.

45. Second, the Defendants have a clear duty to act upon and adjudicate the Plaintiff's

asylum application, and they have unreasonably failed to perform that duty. USCIS has a

mandatory and affirmative duty to adjudicate a properly filed asylum application. 8 C.F.R.

§208.9 ("The Service shall adjudicate the claim of each asylum applicant

whose application is complete within the meaning of § 208.3(c)(3) and is within

the jurisdiction of the Service."). Courts have repeatedly held that USCIS has a mandatory

duty to adjudicate a duly filed application for immigration benefits. *See, e.g., Iddir*, 301 F.3d

at 500 (duty to adjudicate applications under the diversity lottery program); *Patel*, *v. Reno,*

134 F.3d 929, 933 (9th Cir. 1997) (duty to adjudicate visa application); *Yu v. Brown*, 36 F.

Supp. 2d 922, 932 (D.N.M. 1999) (duty to process Special Immigrant Visa Status application

in a reasonable amount of time); *Kai Hoo Loo v. Ridge,* 2007 U.S. Dist. LEXIS 17822, *13

(E.D.N.Y. 2007) ("Indeed, numerous courts have found that immigration authorities have a

non-discretionary duty to adjudicate applications."); *Am. Acad. of Religion v. Chertoff,* 463 F.

Supp. 2d 400, 422 (S.D.N.Y. 2006) (holding that the regulation stating that consular officials

either "issue or refuse" a completed visa creates a duty to adjudicate); *see also Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("When the suit is one challenging

government action or inaction, [and] the plaintiff is himself an object of the action (or

foregone action) at issue, . . . there is ordinarily little question that the action or inaction

caused him injury, and that a judgment preventing or requiring the action will redress it.");

*Manmohanjit Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (noting that

regulations reflect a nondiscretionary duty to process applications for immigration benefits).

The duty applies even where, as here, the benefit sought is discretionary. *See*, *e.g., Villa v.*

*DHS*, 607 F. Supp. 2d 359, 363 (N.D.N.Y. 2009) (duty to adjudicate adjustment application

in a reasonable amount of time); *Dabone v. Thornburgh,* 734 F. Supp. 195, 200 (E.D. PA.

1990) (holding the Board of Immigration Appeals owed plaintiff a duty to adjudicate his

motion to reopen an exclusion proceeding).

46. Although there is no enforceable statutory deadline for adjudicating an asylum

application, there is a nondiscretionary duty under the APA to decide asylum applications

within a reasonable period of time. *See* 5 U.S.C. §§555(b), 706(1). The Defendants have

failed to perform this duty.

47. Defendants' 67-month post-interview delay in adjudicating Plaintiff's asylum application

is unreasonable and it far exceeds the agency's contemplated two-week post-interview

adjudication timeline and Congress' preferred six-month timeframe for adjudicating

applications for immigration benefits. *See* 8 U.S.C. §1571(b).

   a.      Generally, in determining what is "unreasonable," courts may look to a

   variety of factors, including any Congressional guidance on what it considers to be

   reasonable, internal operating procedures established by the agency, processing times

   in similar cases, the source of the delay, and the facts of the particular case. *See*

   *Telecommunications Research & Action Center* [*TRAC*] *v. FCC*, 750 F.2d 70, 80

(D.C. Cir. 1984). A court need not "find any impropriety lurking behind agency

lassitude in order to hold that agency action is unreasonably delayed." *Saleem*, 520 F.

Supp. 2d at 1058-59.

b.       Defendant Cuccinelli's predecessor recognized that "[d]elays in the timely

processing of asylum applications are detrimental to legitimate asylum seekers[.]"

Press Release, USCIS, USCIS to Take Action to Address Asylum Backlog (Jan. 31,

2018), *available at* https://www.uscis.gov/news/news-releases/uscis-take-action-

address-asylum-backlog.

c.       Defendants' ongoing delay is inconsistent with their own internal

operating procedures. Currently, Defendant USCIS makes available data reflecting

how long an asylum applicant can expect to wait between the filing of his or her

application and the date of his or her asylum interview. Current wait times for any

asylum interview are very long – roughly three and a half years at the Arlington

Asylum Office. Notably, however, Defendant USCIS provides a dramatically

different estimate with respect to post-interview adjudication timeframes. According

to USCIS, "[i]n most cases, you will return to the asylum office to pick up the

decision *two weeks after the asylum officer interviewed you*." *See* USCIS Webpage,

The Affirmative Asylum Process, *available at*  https://www.uscis.gov/humanitarian/

refugees-asylum/asylum/affirmative-asylum-process (last visited March 13, 2020)

(emphasis added). Defendant USCIS contemplates longer adjudication times in

certain situations, including where the applicant has "pending security checks[.]" *Id*.

       d.      Defendants' delay in adjudicating Plaintiff's asylum application is

inconsistent with congressional intent. *See* 8 U.S.C. §1154(d)(5)(iii) ("[I]n the

absence of exceptional circumstances, final administrative adjudication of the asylum

application, not including administrative appeal, shall be completed within 180 days

after the date an application is filed[.]"); 8 U.S.C. §1571(b) ("It is the sense of

Congress that the processing of an immigration benefit application should be

completed not later than 180 days after the initial filing of the application….").

48. Third, there is no other adequate remedy available to the Plaintiff. The history of this case

demonstrates that Plaintiff has turned to this Court as a last resort after repeated entreaties to

Defendants. As Plaintiff has no alternative means to obtain adjudication of his asylum

application, his right to issuance of the writ is "clear and indisputable." *Allied Chemical*

*Corp. v. Daiflon Inc.*, 449 U.S. 33, 35 (1980); *see also Lujan*, 504 U.S. at 561-62.

49. Through this complaint, the Plaintiff is not challenging a decision on his asylum

application; he complains only that USCIS has failed to render *any* decision. The Plaintiff

thus seeks to compel the Defendants to decide his long-pending application. The relief sought

is not discretionary, and is by definition a mandatory duty. *See* 8 C.F.R. §208.9(a); *see also*

*Iddir*, 301 F.3d at 497-98.

50. Were mandamus relief unavailable, Defendants could hold asylum applications in

abeyance for decades without providing any reasoned basis for doing so. Such an outcome

defies logic – the Defendants simply do not possess the unfettered discretion to relegate

noncitizens to a state of "limbo, leaving them to languish there indefinitely." *Kim v. Ashcroft*,

340 F. Supp. 2d 384, 393; *see also American Academy of Religion v. Chertoff*, 463 F. Supp.

2d 400 (S.D.N.Y. 2006).

51. Defendants' failure to adjudicate Plaintiff's asylum application harms the Plaintiff.

COUNT TWO
(Violation of the Administrative Procedure Act)

52. All the foregoing allegations are repeated and realleged as though fully set forth herein.

53. Section 706(1) of Title 5 provides that a reviewing court shall compel agency action

unreasonably delayed.

54. Plaintiff has a right to receive a decision on his asylum application within a reasonable

period of time following his interview. 8 C.F.R. §208.9; 5 U.S.C. §§555(b), 706(1); 8 U.S.C.

§1154(d)(5)(iii); 8 U.S.C. §1571(b).

55. Defendants' failure to act violates Plaintiff's right to adjudication of his asylum

application within a reasonable time.

56. Defendants' failure to act harms the Plaintiff.

57. There are no other adequate remedies available.

58. Defendants' actions constitute unreasonable delay in violation of the Administrative

Procedure Act.

**Prayer**

WHEREFORE, the Plaintiff prays that this Court:

1.  Compel the Defendants and those acting under them to perform their duty to adjudicate the

    Plaintiff's asylum application without further delay;

17

2.  Enter a declaratory judgment that the Defendants' unreasonable delay violates the U.S. Constitution, the INA, the federal regulations, the APA, and that such delay is arbitrary and capricious;

3.  Grant attorney's fees and costs of Court to the Plaintiff under the Equal Access to Justice Act, 28 U.S.C. §2412(d)(2); and

4.  Grant such other and further relief as this Court deems proper under the circumstances.

Date: March 13, 2020                              Respectfully submitted,

                                                  */s/ Alfred L. Robertson Jr.*
                                                  Alfred L. Robertson Jr.
                                                  VSB 45000
                                                  Robertson Law Office PLLC
                                                  6575 Edsall Rd.
                                                  Springfield, VA 22151
                                                  (703) 996-4005
                                                  (703) 548-5006 (facsimile)
                                                  rob@robertsonlawoffice.com
                                                  Attorney for the Plaintiff